# United States Court of Appeals
## For the First Circuit

No. 06-1021

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

Plaintiff, Appellee,

v.

HOTEL OASIS, INC., d/b/a PARADOR OASIS;
LIONEL LUGO-RODRÍGUEZ, Individually and as President
of Hotel Oasis, Inc.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya and Cyr, Senior Circuit Judges.

Mauricio Hernández-Arroyo, for appellants.
Mary J. Rieser, Attorney, U.S. Department of Labor, Office of
the Solicitor, Fair Labor Standards Division, with whom Jonathan L.
Snare, Acting Solicitor of Labor, Steven J. Mandel, Associate
Solicitor, and Paul L. Frieden, Counsel for Appellate Litigation,
were on brief, for appellee.

June 28, 2007

**TORRUELLA, Circuit Judge.** This case arises from an investigation of defendant-appellant Hotel Oasis, Inc. ("Oasis") by the Wage and Hour Division of the U.S. Department of Labor. The district court found multiple minimum wage and overtime violations, and entered judgment against Oasis and its president. The employers appeal the district court's judgment, alleging error in the court's failure to set aside a stipulation entered prior to trial, its conclusion that Oasis's president is personally liable as an employer, and its discretionary decision to award liquidated damages. We affirm on all grounds.

## I. Background

Oasis operates a hotel and restaurant facility in southwestern Puerto Rico. Defendant-appellant Dr. Lionel Lugo-Rodríguez ("Lugo") is the president of the corporation, runs the hotel, and manages its employees. Oasis's records and employee testimony show that between October 3, 1990 and June 30, 1993,[1] employees were paid less than minimum wage, were not paid for training time or meetings held during non-working hours, were paid in cash "off the books," and were not paid appropriately for overtime. Oasis also maintained two sets of payroll records for the same employees, covering the same time periods, one showing

---

[1] Oasis had been investigated twice before, and violations of minimum wage and overtime laws had been found on both occasions. Oasis agreed both times to pay the back wages and comply in the future.

fewer hours at a higher rate, and the other showing more hours at a sub-minimum wage rate. Oasis contends that two sets of books were necessary, one for temporary employees and one for permanent employees.

On April 5, 1994, the Secretary of Labor (the "Secretary") filed a complaint in the United States District Court for the District of Puerto Rico against Oasis and Lugo (collectively, "Defendants"), alleging violations of the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 215-216. The Secretary also sought liquidated damages pursuant to § 216(c), and a permanent injunction pursuant to § 217, enjoining Oasis from further violations of the FLSA. In their answer to the complaint, Defendants raised an affirmative defense that the FLSA did not apply to Oasis because Oasis's "annual dollar value" ("ADV") was less than $500,000. See 29 U.S.C. § 203(s)(1)(a).

On February 9, 1996, during a pre-trial conference, Jorge Sala, then-counsel for Oasis, stipulated that Oasis had an ADV of at least $500,000 per year from April 1, 1991 to October 1, 1995 (the "Sala Stipulation").[2] In exchange, the Secretary agreed that Oasis was in compliance with the FLSA thereafter. Defendants point

_____

[2] The minutes for that conference stated that Defendants "withdraw the ADV defense." The minutes were amended on April 22, 1996, to reflect that Defendants "waive[d] the ADV defense though the third quarter of 1995."

-3-

out that discovery had not been concluded at the time Sala entered the stipulation, and that Defendants had refused to execute a similar stipulation mailed to them ten weeks earlier by counsel for the Secretary. On July 18, 1996, Sala filed a motion to withdraw as counsel, and Defendants hired a new attorney.

During a September 6, 1996 telephone status conference, Defendants attempted to renew their ADV defense, apparently claiming that Sala did not have the authority to enter into the stipulation.[3] On September 16, 1996, the district court issued an order reaffirming the Sala Stipulation and stating that the stipulation would not be set aside absent "the most extraordinary extenuating and grievous circumstances."

At a June 1997 pre-trial conference, Defendants asserted for the first time that the Sala Stipulation was based on a computational mistake. The district court once again upheld the stipulation, ruling that the Secretary could rely on the stipulation to meet its burden to prove FLSA coverage, but that Defendants would be allowed to adduce evidence at trial to prove that Oasis's ADV was less than $500,000 for the relevant periods.

A bench trial began on June 23, 1997. After five successive days, the trial was continued for over two years,

---

[3] Defendants' reasoning is gleaned from a May 15, 2002 order in which the district court indicated that prior to June 1997, Defendants had relied solely on Sala's lack of authorization as grounds for setting aside the stipulation.

resuming on February 7, 2000. On July 13, 1998, more than a year after the trial commenced, Defendants submitted a motion for summary judgment, which included expert affidavits concluding that Oasis did not meet the ADV threshold. The district court refused to entertain the motion for summary judgment because it was submitted well after the trial began. In addition, the court precluded Defendants from introducing the accompanying expert testimony at trial because "[n]either the expert nor the report [was] identified and disclosed to Plaintiff before the trial commenced."

At trial in February 2000, Defendants attempted to introduce Rule 1006 summaries,[4] which purported to show that Oasis's ADV was less than $500,000 for some of the periods covered by the Sala Stipulation. The Secretary's counsel objected on several grounds over the course of the trial, including that the summaries were inadmissible because they were based on hearsay, and that he had not been provided the summaries before trial and therefore could not concede their numerical accuracy. For these reasons, the district court refused to admit the summaries at that point. Instead, after testimony was concluded on all subjects

---

[4] Federal Rule of Evidence 1006 provides in full: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court."

other than the ADV, the court adjourned the trial, giving Defendants thirty days to comply with Rule 1006 and the Secretary another sixty days to review the data and develop her position.

The trial was continued several times thereafter. On October 19, 2000, the Secretary filed a memorandum in support of her motion to preclude Defendants from presenting evidence contrary to the Sala Stipulation. Defendants never formally opposed the motion, and on May 15, 2002, the district court granted the motion. The court explained that it had given Defendants "an opportunity to demonstrate that the Sala Stipulation was wrong," but that "the record is bereft of any solid argument developed by Oasis which may point to 'extraordinary extenuating or grievous circumstance[s]' which might justify setting the Sala Stipulation aside." With no evidence of "a clear manifest injustice," the court held Defendants to the stipulation based on the long-standing principle that a party is bound by its attorney's actions.

On June 28, 2002, having reaffirmed the Sala Stipulation, the district court nevertheless offered Defendants an alternative way to submit the Rule 1006 summaries in lieu of an evidentiary hearing: "[the parties] shall file a joint proffer of evidence or offer of proof, to preclude the necessity of the hearing; it shall be akin to a book of evidence that is offered, albeit not admitted." Although the court's May 15, 2002 order holding Defendants to the Sala Stipulation was final, the court felt that

the proffered evidence would give the Court of Appeals a complete record on which to decide the ADV issue on the merits.

A year later, on June 20, 2003, the district court entered an order granting the Secretary's unopposed motion for partial summary judgment on the issue of Lugo's personal liability as an employer under the FLSA.[5]  In addition, the order again addressed the Sala Stipulation and the Rule 1006 summaries. Although neither party had complied with the court's alternative method of submitting the Rule 1006 evidence, the court granted them another twenty days to file their offers of proof on the ADV issue. The court also reminded Defendants that "[t]he Sala Stipulation was bilateral and had a 'quid pro quo' for the employer, because the Department of Labor, as part of the announced stipulation, agreed that Defendants had been in compliance since October[] 1995." Defendants finally submitted the Rule 1006 summaries on July 17, 2003, and various memoranda and supplemental filings by both parties followed.

After further hearings, the district court entered judgment in favor of the Secretary on October 31, 2003.  The

---

[5]  The motion had been granted during a pre-trial conference on June 11, 1997, after hearing the parties' positions on the issue. The parties were aware of the court's decision but the order had not been entered into the docket.  The issue of Lugo's liability was rehashed on several occasions throughout the course of litigation, as noted in the court's November 11, 2005 Amended Opinion and Order, denying Defendants' final motion for reconsideration.

accompanying Opinion & Order denied a number of "Rule 50 Motions" filed by Defendants over the course of the proceedings, the most relevant to this appeal being a motion not normally thought of as within the compass of Rule 50 -- a motion to reconsider the court's denial of Defendants' July 13, 1998 motion for summary judgment on the ADV issue. The opinion also once again explained the history of both the Sala Stipulation and the issue of Lugo's personal liability as an employer. The court noted that its grant of partial summary judgment on Lugo's status was further supported by Defendants' admissions at trial that "Lugo had ultimate control over [Oasis]'s operations, and over employment practices."

On June 21, 2005, the court amended the judgment, ordering Oasis to pay $141,270.64 in back wages and an equal amount in liquidated damages to 282 current and former employees. Oasis filed one last motion for reconsideration on July 1, 2005, asking the court to reconsider its decisions on liquidated damages and Lugo's personal liability as an employer. The district court issued an amended opinion and order on November 1, 2005, denying the motion for reconsideration on the ground that Defendants were merely rehashing old arguments. Defendants appeal from the final judgment and from the court's denial of their last motion for reconsideration.

## II. <u>Discussion</u>

Defendants raise three issues on appeal.  First, they claim that the district court should have set aside the Sala Stipulation and allowed them to prove the ADV defense at trial. Second, they challenge the district court's finding that Lugo is personally liable as an employer under the FLSA.  Third, they argue that the district court erred in awarding liquidated damages based on willfulness.  We address each issue in turn.

### A. Sala Stipulation

The district court refused to set aside the Sala Stipulation based on the general principle that "stipulations of attorneys made during a trial may not be disregarded or set aside at will."  <u>T I Fed. Credit Union</u> v. <u>DelBonis</u>, 72 F.3d 921, 928 (1st Cir. 1995) (quoting <u>Marshall</u> v. <u>Emersons Ltd.</u>, 593 F.2d 565, 569 (4th Cir. 1979)); <u>see also</u> <u>Rosario-Díaz</u> v. <u>González</u>, 140 F.3d 312, 315 (1st Cir. 1998) ("Attorneys represent clients, and as a general rule an attorney's blunder binds her client.").  As the district court correctly noted, stipulations are highly favored in our judicial system as a means of "expedit[ing] a trial and eliminat[ing] the necessity of much tedious proof."  <u>T I Fed. Credit Union</u>, 72 F.3d at 928 (quoting <u>Burstein</u> v. <u>United States</u>, 232 F.2d 19, 23 (8th Cir. 1956)).  Once entered, parties are "not generally free to extricate themselves . . . [unless] 'it becomes apparent that it may inflict a manifest injustice upon one of the

-9-

contracting parties.'" Id. (quoting Marshall, 593 F.2d at 568).

Accordingly, "a party may be relieved of a stipulation for good

cause -- which means, in a nutshell, that good reason must exist

and that relief must not unfairly prejudice the opposing party or

the interests of justice." Am. Honda Motor Co. v. Richard

Lundgren, Inc., 314 F.3d 17, 21 (1st Cir. 2002). One "good reason"

for setting aside a stipulation is "where it becomes evident that

'the agreement was made under a clear mistake.'" T I Fed. Credit

Union, 72 F.3d at 928 (quoting Brast v. Winding Gulf Colliery Co.,

94 F.2d 179, 181 (4th Cir. 1938) (setting aside a stipulation as to

tax liability where the calculation had been based on a

misunderstanding of law)).

Here, the district court gave Defendants an opportunity

to prove that the stipulation was based on a mistake, but

Defendants failed to make the required showing.[6] Defendants do not

challenge the district court's rulings with respect to the

---

[6] Defendants argued that the district court misplaced the burden of proof on the ADV issue, by requiring Defendants to prove a lack of coverage. Defendants, however, stipulated that Oasis's ADV met the statutory threshold, and the district court affirmed the stipulation, which relieved the Secretary of her burden to prove FLSA coverage. See, e.g., Eng'g Contractors Ass'n of S. Fla., Inc. v. Metro. Dade County, 122 F.3d 895, 905 (11th Cir. 1997) (citing Fed. R. Civ. P. 16(c)(3)). The burden was then properly on Defendants to show good cause for setting aside the stipulation. See Cabán Hernández v. Philip Morris USA, Inc., -- F.3d --, No. 06-1968, 2007 WL 1248414, at *3 (1st Cir. 2007) ("The appellants have shown nothing that would constitute good cause or otherwise justify relief from the stipulation.").

inadmissibility of the Rule 1006 summaries[7] or the expert evidence presented with their ill-timed summary judgment motion. We have scoured the record, and, like the district court, we find no indication of any properly supported arguments that Oasis did not meet the ADV threshold.

Alternatively, Defendants argue that the Sala Stipulation is procedurally invalid because it was not in writing or signed by the parties. They assert that stipulations between attorneys are not binding unless the represented parties assent to the stipulation, and that stipulations usually must be in writing unless made in open court. Defendants also posit that stipulations must be signed by all parties when required by local rules, citing Cavallini v. State Farm Mutual Auto Insurance Co., 44 F.3d 256, 266 (5th Cir. 1995) (applying Tex. R. Civ. P. 11). The District Court for the District of Puerto Rico, however, has no specific rule requiring all agreements between parties to be in writing.[8]

---

[7] Defendants complain that they did not get a hearing on the Rule 1006 evidence, as promised by the court. Defendants did not, however, oppose the Secretary's motion to preclude them from offering any evidence contrary to the stipulation, which rendered the Rule 1006 evidence unnecessary. Moreover, Defendants then agreed to file a joint proffer of evidence in lieu of a hearing.

[8] Note, however, that Local Rule 16(j)(2) does specifically require stipulations extending discovery deadlines to be in writing. The closest rule otherwise on point is Local Rule 11, which requires that all documents submitted to the court be signed by an attorney or pro se litigant.

In any event, the district court memorialized the Sala Stipulation -- entered into by the attorneys at a pre-trial status conference before the district court judge -- in a September 16, 1996 order. Defendants did not object to the order, move to strike the reference to the stipulation, or request reconsideration. The order then became the law of the case, and any formalities suggested by Defendants with respect to the stipulation were rendered moot. See Fed. R. Civ. P. 16(e) ("After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order.").

Finally, Defendants attack the subject matter jurisdiction of the court, arguing that the parties cannot stipulate to ADV coverage because it is a jurisdictional requirement of the FLSA. See Aponte v. Tabares, 114 F.3d 1169, 1997 WL 235473, at *1 (1st Cir. 1997) (unpublished opinion) ("Limits on subject matter jurisdiction are not waivable and, therefore, may be raised at any time."). This argument fails, however, because ADV coverage is not jurisdictional. As the Supreme Court recently noted, "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief -- a merits-related determination." Arbaugh v. Y & H Corp., 546 U.S. 500, 511

-12-

(2006) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[1] (3d ed. 2005)). To mitigate this confusion, the Court provided clear guidance for distinguishing between the two concepts: "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 515. The FLSA places the ADV limitation in the definitions section of the Act, and does not suggest that the ADV limitation is jurisdictional. See 29 U.S.C. §§ 203(s)(1)(a), 216. We therefore treat it as an element of the claim. Cf. Fernández v. Centerplate/NBSE, 441 F.3d 1006, 1009 (D.C. Cir. 2006) ("While the merits of Fernandez's FLSA claim turn on whether she was paid for hours worked in excess of forty per week, nothing in the FLSA suggests that a failure to prove this particular element of her cause of action requires a dismissal for lack of jurisdiction."); Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 356 (5th Cir. 2006) ("In light of the Supreme Court's decision in Arbaugh, we conclude that the definition section of the [Family Medical Leave Act] . . . is a substantive ingredient of a plaintiff's claim for relief, not a jurisdictional limitation.").

As Defendants have not established good cause for setting aside the Sala Stipulation, we find no abuse of discretion in the district court's decision to hold Defendants to their agreement.

## B. Employer Liability

Defendants next challenge the district court's grant of partial summary judgment on the issue of Lugo's personal liability as an employer, arguing that the FLSA does not contemplate holding corporate officers individually liable for the corporation's statutory violations. We review a district court's grant of summary judgment de novo, viewing the summary judgment record in the light most favorable to the non-moving party. Vasapolli v. Rostoff, 39 F.3d 27, 32 (1st Cir. 1994).

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The First Circuit has followed the Supreme Court's lead in interpreting this definition pursuant to an "economic reality" analysis. Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983) (citing Goldberg v. Whitaker, 366 U.S. 28, 33 (1961)). Accordingly, there may be multiple "employers" who are simultaneously liable for compliance with the FLSA. Id.; Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998).

In Donovan v. Agnew, we acknowledged that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." 712 F.2d at 1511 (collecting

-14-

cases). Although we found it "difficult to accept . . . that Congress intended that any corporate officer or other employee with ultimate operational control over payroll matters be personally liable," id. at 1513 (emphasis added), we narrowly determined that the FLSA did not preclude personal liability for "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment," id. at 1514.

We next visited the issue of an individual's personal liability under the FLSA for corporate employment practices in Baystate Alternative Staffing, 163 F.3d 668. There, the Department of Labor's Administrative Review Board had held two corporate officers and managers personally liable for FLSA violations because "they had the authority to manage certain aspects of the business's operations on a day-to-day basis." Id. at 678. Noting our concern in Agnew that not every corporate employee who exercised supervisory control should be held personally liable, we identified several factors that were important to the personal liability analysis, including the individual's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role in "caus[ing] the corporation to compensate (or not to compensate) employees in accordance with the FLSA." Id. We

-15-

remanded the personal liability issue in that case based on the Board's failure to address "the [individuals'] personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act."  Id.

Based on the above considerations, we affirm the district court's judgment holding Lugo personally liable for Oasis's compensation decisions.  Lugo was not just any employee with some supervisory control over other employees.  He was the president of the corporation, and he had ultimate control over the business's day-to-day operations.  In particular, it is undisputed that Lugo was the corporate officer principally in charge of directing employment practices, such as hiring and firing employees, requiring employees to attend meetings unpaid, and setting employees' wages and schedules.  He was thus instrumental in "causing" the corporation to violate the FLSA.  See id.; see also Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir. 1983) (holding corporate president who dominated employment practices liable under FLSA).  The FLSA contemplates, at least in certain circumstances, holding officers with such personal responsibility for statutory compliance jointly and severally liable along with the corporation.[9]  See Agnew, 712 F.2d at 1510.

---

[9]  Neither party discusses Lugo's ownership interest in Oasis.  In this case, however, Lugo's personal responsibility outweighs any ownership considerations.  See Agnew, 712 F.2d at 1511 (citing Sabine Irrigation Co., 695 F.2d at 194-95, for the proposition that a corporate officer may be held liable even if he has no ownership

-16-

## C. Liquidated Damages

Finally, Defendants argue that the district court erred in awarding liquidated damages based on a finding of willfulness. The FLSA authorizes the Secretary of Labor to recover on behalf of employees unpaid wages and overtime compensation plus an equal amount in liquidated damages. 29 U.S.C. § 216(b), (c). The only way an employer can escape liquidated damages is to "show[] to the satisfaction of the court" that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA. Id. § 260. Because the FLSA leaves the decision to depart from the norm of awarding double damages to the district court, see, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), we review only for abuse of discretion, McLaughlin v. Hogar San José, Inc., 865 F.2d 12, 14 (1st Cir. 1989). The employer's burden on appeal is especially difficult because we review the district court's factual findings related to good faith and reasonableness for clear error. See id. ("The district court's findings of good faith and reasonable grounds are mixed questions of law and fact, which are subject to the strict standard of review of Rule 52(a).").

Here, the district court found that Defendants failed to show good faith or objective reasonableness, referring back to its findings on willfulness with respect to the applicable statute of

interest).

-17-

limitations. See Reich v. Newspapers of New Eng., Inc., 44 F.3d 1060, 1079 (1st Cir. 1995) ("The FLSA imposes a two-year statute of limitations unless the violations are shown to be willful, in which case a three-year period applies." (citing 29 U.S.C. § 255(a))). For statute of limitation purposes, the court found, inter alia, that Defendants "intentionally and consistently failed to keep accurate records of the time worked by its employees[,] . . . disguised minimum wage, as well as overtime pay violations, . . . did not record the amounts of cash tips[,] . . . [and] most salient . . . [to] a finding of willfulness, . . . [paid] employee 'off the books.'"

The district court's willfulness findings are not clearly erroneous, and they adequately support the court's decision to award liquidated damages. Oasis's failure to keep adequate payroll records and its intentional manipulation of the records it did keep are sufficient grounds for concluding that Oasis did not act in good faith or with a reasonable belief that it was in compliance with the FLSA. Cf. Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 844 (6th Cir. 2002) ("[T]he fact that an employer knowingly under-reported its employee's work hours could suggest to a [fact finder] that the employer was attempting to conceal its failure to pay overtime from regulators, or was acting to eliminate evidence that might later be used against it in a suit by one of its employees."). Moreover, a finding of willfulness means that

"the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

Defendants' primary argument on appeal is that the court had indicated at trial that the willfulness issue was "close" and that the Secretary had offered no evidence that Oasis acted in reckless disregard of its statutory obligations. Cf. López v. Corporación Azucarera de P.R., 938 F.2d 1510, 1515 (1st Cir. 1991) ("Plaintiffs herein have proffered no evidence indicating that [the employer] acted with knowledge or reckless disregard with respect to its obligations under FLSA. . . . Therefore, in the first instance, the court holds that the two-year limitation term is applicable to this case."). These arguments are unpersuasive. First, the district court noted its "initial inclination against a determination of willfulness," but explained that it ultimately relied on the employees' testimony and Defendants' own documentary evidence to reach its conclusion regarding willfulness. We have already determined that the willfulness finding is not clearly erroneous.[10] Furthermore, it is the employer's burden to show good faith and objective reasonableness, see 29 U.S.C. § 260, and therefore the Secretary's alleged failure to offer evidence of

---

[10] Some circuits have held that a finding of willfulness precludes a district court's decision not to award liquidated damages, see, e.g., Brinkman v. Dep't of Corr., 21 F.3d 370, 372-73 (10th Cir. 1994), but we need not go so far, see Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1084 (8th Cir. 2000).

-19-

willfulness is not an impediment to the court's decision to refrain from awarding liquidated damages.  The district court found that Defendants failed to meet their burden, and, again, that finding is not clearly erroneous.  We therefore find no abuse of discretion in the district court's award of liquidated damages.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the judgment against Defendants.

**<u>Affirmed</u>**.