**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

SHAWN J. GIESWEIN,

Defendant–Appellant.

No. 08-6113
(D.C. No. 5:07-CR-00120-F-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

Shawn J. Gieswein appeals his convictions for possession of a firearm after

a felony conviction and witness tampering. He argues that applying the federal

felon dispossession statute, 18 U.S.C. § 922(g)(1), to the facts of his case violates

the Second Amendment and exceeds Congress' power under the Commerce

Clause in light of the recent Supreme Court decision, District of Columbia v.

Heller, 128 S. Ct. 2783 (2008). He further contends that both his convictions

should be reversed because the length of his pretrial detention violated the

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Interstate Agreement on Detainers Act ("IADA"). Pub. L. No. 91-538, 84 Stat. 1397 (1970). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

In June 2006, law enforcement officials in Woodward County, Oklahoma, obtained a warrant to search Gieswein's home for evidence of sex crimes. Before executing the search, they gave Gieswein a copy of the warrant and advised him of his <u>Miranda</u> rights. In the course of the search, officers discovered an Interarms semi-automatic .22 caliber rifle. An investigator from the district attorney's office was familiar with Gieswein's extensive criminal history and knew him to be a convicted felon. Officers seized the rifle, along with several other items, and left the house.

On May 2, 2007, while Gieswein was serving the state sentence resulting from the aforementioned investigation, Gieswein was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The United States Marshals Service lodged a detainer against Gieswein on May 10, 2007. As a part of the detainer, Gieswein signed a clause asserting his IADA right to be tried within 180 days. He was taken into Marshals' custody on June 20, 2007.

Gieswein's trial was initially set for the district court's August 13, 2007 trial docket. At a docket call on August 7, 2007, however, the government requested a continuance to the September docket. Counsel for Gieswein indicated

that "Mr. Gieswein is very interested in having a trial as soon as possible," but refused to take a position on the motion until he had an opportunity to consult with his client. The court declined to enter an order, but informed Gieswein's attorney that "unless I hear from you . . . by the end of the day Thursday, that you'd like to be heard, you can safely assume that we will reset this case on the September docket." After discussing the continuance with Gieswein, the attorney emailed the court clerk, stating, "Mr. Gieswein does not want to be heard further on the government's request. We understand the case will be continued to the September docket." The court then entered an order setting the case for trial on September 10.

In late August, a grand jury returned a superseding indictment against Gieswein, adding a new count under § 922(g)(1) for possession of ammunition. Shortly thereafter, the government learned from records of Gieswein's prison phone calls that he had urged his mother and a subpoenaed witness to testify falsely. On August 31, the government moved for a second continuance so that it could obtain a second superseding indictment adding a witness tampering charge.

The district court held a hearing on the government's motion on September 5, 2007. It granted the continuance, finding that a delay would be "entirely fair to all concerned." However, it could not set the case for trial on the court's October 9 docket, as requested, because the presiding judge had an official business trip to Russia scheduled in October. Instead, the court set the case for the November 5

docket.  Later that day, a grand jury returned a second superseding indictment, adding a count of witness tampering in violation of § 1512(b)(1) and removing the ammunition charge.

Gieswein filed several motions prior to trial, including a motion to dismiss for prosecutorial vindictiveness and a motion to dismiss for violation of the IADA.  The court denied these motions and the case proceeded to trial.  A jury was empaneled on November 5, 2007, but it was not sworn until November 26.

At trial, Gieswein focused his defense to the gun charge on the possession element.  He stipulated that he had been convicted of a felony.[1]  As to the interstate commerce element, the government introduced testimony from a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives that the rifle found in Gieswein's home had been manufactured in China and imported into Virginia.  Gieswein purchased the gun in 1995 in Woodward, Oklahoma.

The jury returned a verdict finding Gieswein guilty on both the gun possession and witness tampering counts.  He was sentenced to 240 months' imprisonment, five months longer than the top of the applicable United States Sentencing Guidelines range.  The court explained, "[T]he guidelines in this case

---

[1] Gieswein's presentence report shows multiple felony convictions  in addition to the state conviction noted above.  He pled guilty to destruction of property by an explosive device in 1995 after placing a pipe bomb inside a parked car.  In 2000, Gieswein pled guilty to lewd molestation of his adopted nine-year-old sister.  The following year, he pled guilty to embezzlement by an employee.  Finally, in 2004, he pled guilty to first degree burglary after breaking into an ex-girlfriend's house while her parents were sleeping inside.

simply do not give sufficient effect to the depth, breadth, persistence, depravity and harmfulness of the criminal conduct of this defendant."

Gieswein timely appealed.

## II

On appeal, Gieswein advances three arguments. He contends: (1) in light of <u>Heller</u>, his conviction for being a felon in possession of a firearm violates the Second Amendment; (2) post-<u>Heller</u>, § 922(g)(1) exceeds Congress' power under the Commerce Clause when applied to prohibit possession of a long rifle that did not cross state lines while in the defendant's possession; and (3) the judgment must be reversed because the length of his detention violated the IADA.

## A

We can quickly dispose of Gieswein's first two arguments; both are foreclosed by a recent opinion of this court, <u>United States v. McCane</u>, --- F.3d ---, 2009 U.S. App. LEXIS 16557 (10th Cir. July 18, 2009). <u>See</u> <u>United States v. Mitchell</u>, 518 F.3d 740, 752 n.14 (10th Cir. 2008) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." (quotation omitted)). Our fellow panel rejected, post-<u>Heller</u>, Second Amendment and Commerce Clause challenges to the constitutionality of § 922(g)(1).

As to the Second Amendment challenge, the <u>McCane</u> panel rested on the following statement in <u>Heller</u>: "[N]othing in our opinion should be taken to cast

-5-

doubt on longstanding prohibitions on the possession of firearms by felons . . . ."
128 S. Ct. at 2816-17. Applying that dictum, McCane held that § 922(g)(1)
remains valid despite Heller's holding that the Second Amendment confers an
individual right to possess firearms. McCane, 2009 U.S. App. LEXIS 16557, at
*27; see also United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007)
("[W]e are bound by Supreme Court dicta almost as firmly as by the Court's
outright holdings, particularly when the dicta is recent and not enfeebled by later
statements." (quotation omitted)). This decision comports with that of every
other circuit that has addressed a Second Amendment challenge to § 922(g)(1)
after Heller. See United States v. Anderson, 559 F.3d 348, 352 & n.6 (5th Cir.
2009); United States v. Brye, 318 F. App'x 878, 880 (11th Cir. 2009)
(unpublished); United States v. Frazier, 314 F. App'x 801, 807 (6th Cir. 2008)
(unpublished); United States v. Brunson, 292 F. App'x 259, 261 (4th Cir. 2008)
(unpublished); United States v. Irish, 285 F. App'x 326, 327 (8th Cir. 2008)
(unpublished); United States v. Gilbert, 286 F. App'x 383, 386 (9th Cir. 2008)
(unpublished).

Although McCane was decided after this case was orally argued, the United
States cited its authority in a Federal Rule of Appellate Procedure 28(j) letter to
the court. In response, Gieswein argues that McCane is not dispositive for two
reasons: (1) its summary treatment of the Second Amendment challenge indicates
that the "appellant did not present a full-scale historical analysis of the Second

-6-

Amendment"; and (2) <u>McCane</u> did not address authorities provided by Gieswein.

We are not unsympathetic to a litigant, such as Gieswein, whose position is

foreclosed by a case argued after his. But we note that much of Gieswein's

Second Amendment argument is also raised in the <u>McCane</u> concurrence.[2]

Regardless, neither of Gieswein's arguments supplies the necessary justification

to reverse a prior panel. <u>See</u> <u>Mitchell</u>, 518 F.3d at 752 n.14.

<u>McCane</u> is also dispositive as to Gieswein's Commerce Clause challenge.

As Gieswein concedes, this court has repeatedly upheld the validity of

§ 922(g)(1) in the face of such challenges. <u>See, e.g.</u>, <u>United States v. Urbano</u>,

563 F.3d 1150, 1154 (10th Cir. 2009) (rejecting Commerce Clause challenge

when, as here, "the only evidence the government presented linking [defendant]

to interstate commerce is evidence that the gun traveled in interstate commerce at

some earlier time"); <u>United States v. Patton</u>, 451 F.3d 615, 634-36 (10th Cir.

2006). Gieswein argues that <u>Heller</u> altered this analysis, but <u>McCane</u> rejects this

argument, 2009 U.S. App. LEXIS 16557, at *27-28, and so must we.

**B**

Gieswein also claims that the charges against him should have been

---

[2] We share the concern, expressed in the <u>McCane</u> concurrence, that the <u>Heller</u> dictum may be in tension with the basis for its own holding, as felon dispossession laws may not have the longstanding historical basis ascribed to them by the Court. <u>McCane</u>, 2009 U.S. App. LEXIS 16557, at *29 (Tymkovich, J., concurring). The <u>McCane</u> concurrence further worries that <u>Heller</u>'s dictum will stunt the development of Second Amendment jurisprudence in the lower courts. <u>Id.</u> at *35-36.

dismissed because the length of his pretrial detention violated the IADA.  The

IADA is an interstate compact (which the Federal Government has also joined)

that "creates uniform procedures for lodging and executing a detainer, i.e., a legal

order that requires a State in which an individual is currently imprisoned to hold

that individual when he has finished serving his sentence so that he may be tried

by a different State for a different crime."  Alabama v. Bozeman, 533 U.S. 146,

148 (2001).  It requires that "trial shall be commenced within one hundred and

twenty days of the arrival of the prisoner in the receiving State, but for good

cause shown in open court, the prisoner or his counsel being present, the court

having jurisdiction of the matter may grant any necessary or reasonable

continuance."  Pub. L. No. 91-538, art. IV(c), 84 Stat. at 1400.

Gieswein was taken into federal custody on June 20, 2007.  A jury was

empaneled on November 5, 2007, and it was sworn on November 26, 2007.

According to Gieswein's count, he was held for 159 days.  However, Gieswein

concedes that the first continuance granted, from August 7 to September 5, does

not count for IADA purposes.[3]  He argues that this leaves 130 countable days,

exceeding the IADA's 120-day limit.

---

[3] We understand this concession to be based on waiver.  When a defendant consents to a continuance, that delay does not count toward the IADA's 120-day time limit.  See New York v. Hill, 528 U.S. 110, 114-18 (2000).  Gieswein stated that he did "not want to be heard further on the government's request" for the first continuance, and indicated his understanding that "the case will be continued to the September docket."

The government provides a laundry list of reasons to subtract at least ten more days. It argues: (1) the second continuance was granted for good cause; (2) the IADA clock was tolled by defense motions; (3) newly filed charges restart the IADA clock; and (4) Gieswein's trial commenced when the jury was empaneled, not when opening statements were offered. Because the first argument decides the question, we do not reach the government's alternative contentions.

The government sought to continue Gieswein's trial from the court's September 10, 2007, docket to its October 9 docket after learning that Gieswein had attempted to convince two witnesses to commit perjury. The court held a hearing on September 5 at which both Gieswein and his counsel were present. After the government explained its reasons for seeking the continuance, the court decided that a delay would be "entirely fair to all concerned." We agree with the district court that the government's reasons for seeking this continuance— recently discovered evidence of witness tampering and the resulting impending superseding indictment—constitute "good cause" for a continuance to provide time to prepare to try the new charge. Cf. Chao v. Hotel Oasis, Inc., 493 F.3d 26, 32 (1st Cir. 2007) ("[G]ood cause . . . means, in a nutshell, that good reason must exist and that relief must not unfairly prejudice the opposing party or the interests of justice.").

Gieswein argues that even if the superseding indictment provided good cause, it cannot justify the entire sixty-day continuance because the only reason

the trial was not held in October—as the government requested—was the presiding judge's planned trip to Russia. But having concluded that the continuance was based on good cause at least for the period from September 10 to October 9, the IADA clock is tolled an additional twenty-nine days, and therefore only 101 days elapsed by the time the jury was sworn on November 26, 2007. We thus agree with the district court that Gieswein has not shown an IADA violation.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge