*62 STAHL, Circuit Judge,
concurring in part and dissenting in part.
I join the court’s thorough opinion in all but one respect. I part ways with my colleagues as to whether the plaintiffs have stated a claim against Elaine Ullian, BMC’s erstwhile president and CEO. In my view, the plaintiffs’ vague, boilerplate allegations do not nudge their claim against Ullian across the line from conceivable to plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, I respectfully dissent from the court’s decision on this point.
As the majority explains, our precedents use an “economic reality” test to gauge whether an individual defendant is the plaintiffs “employer” for FLSA purposes.[17] See Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir.2007); Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir.1998); Donovan v. Agnew, 712 F.2d 1509, 1513 (1st Cir.1983). This test “focuse[s] on the role played by the corporate officer! ] in causing the corporation to undercompensate employees.” Baystate, 163 F.3d at 678. “[Rjelevant indicia” of employer status include the defendant’s “operational control over significant aspects of the business” and “ownership interest in the business,” if any; these factors matter “because they suggest that an individual controls a corporation’s financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.” Id.; see Hotel Oasis, 493 F.3d at 34. This focus on actual operational control means that “a supervisor’s title does not in itself establish or preclude his or her liability under the FLSA.” Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1310 (11th Cir.2013).
Importantly, our cases warn against construing the FLSA definition of “employer” too broadly when ruling on claims against individual defendants. See Hotel Oasis, 493 F.3d at 34; Baystate, 163 F.3d at 679; Agnew, 712 F.2d at 1513. In our first encounter with individual liability under the FLSA, we concluded that “it should not lightly be inferred that Congress intended to disregard in this context the shield from personal liability which is one of the major purposes of doing business in a corporate form.” Agnew, 712 F.2d at 1513. We thus eschewed a literal reading of the FLSA’s “broadly inclusive definition of ‘employer,’ ” which would impose personal liability on “any supervisory employee,” and adopted the economic reality test instead. Id.; see Baystate, 163 F.3d at 679 (reaffirming that “such an expansive application of the definition of an ‘employer’ to a personal liability determination pursuant to the FLSA is untenable”). We should apply that test with this concern about unbounded liability in mind. See Hotel Oasis, 493 F.3d at 34 (describing Agnew as “narrowly” deciding that the FLSA “did not preclude personal liability” for officers with significant ownership interests and significant day-to-day operational control, including over compensation of employees, who personally made decisions leading to undercompensation); Agnew, 712 F.2d at 1513.
One other factor impacts how we must analyze the plaintiffs’ claim against Ullian: this case, unlike Agnew, Baystate, or Hotel Oasis, was resolved on a motion to dismiss. *63 Thus, for the plaintiffs’ claim against Ullian to proceed, their complaint “must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). Put another way, the complaint’s “non-conclusory factual content,” Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639 (1st Cir. 2013), must allow us to draw the reasonable inference that Ullian was the plaintiffs’ “employer” under the economic reality test. This inference cannot rest solely on allegations that, “while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.” Pruett v. Caritas Christi, 678 F.3d 10, 13 (1st Cir.2012) (quoting Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir.2011)) (internal quotation mark omitted). Here, the plaintiffs’ claim against Ullian relies on just such “borderline” allegations. See id.
Most of the allegations against Ullian amount to this: she was BMC’s CEO and had many of the responsibilities one would expect a CEO to have. The complaint says that Ullian “controlled significant functions of the business”; “was involved in the budget for the hospital”; “was involved in regular presentations and meetings in the community on behalf of’ BMC; “had the authority to, and did, make decisions that concerned the policies defendants adopted and the implementation of those policies”; “had the authority to, and did, make decisions that concerned defendants’ operations, including functions related to employment, human resources, training, payroll, and benefits”; and was actively involved in recruiting, hiring, and reductions in force due to budget cuts. Thus, we know that Ullian had many of the high-level (if vaguely described) responsibilities that a CEO normally has, but our cases make clear that merely holding a high-level supervisory or executive position is not enough to trigger individual FLSA liability. See Agnew, 712 F.2d at 1513; see also Irizarry v. Catsimatidis, 722 F.3d 99, 107, 2013 WL 3388443, at *6 (2d Cir. July 9, 2013) (“Most circuits ... [require] that a company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA ‘employer.’”). And many of the allegations that seek to tie Ullian to the plaintiffs’ employment situation are “nominally cast in factual terms but [are] so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint.” Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir.2012). For example: “As President and CEO, Elaine Ullian actively advised defendants’ agents on the enforcement of the illegal policies complained of in this case.” It is hard to imagine what facts underlie this assertion.
Some allegations are more specific: we are told of Ullian’s role in overseeing a merger, constructing a new hospital building, implementing an electronic records system, setting policy regarding pharmaceutical and medical device representatives, and taking part in a rally supporting health-care services for the underprivileged. Taken together, these allegations plausibly establish that Ullian “had the authority to manage certain aspects of the business’s operations on a day-to-day basis.” Baystate, 163 F.3d at 678. But, in Baystate, that was not enough; we also called for some indication of “personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act.” Id. As the Second Circuit recently put it:
*64 Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee’s function, is insufficient to demonstrate ‘employer’ status. Instead, to be an ‘employer,’ an individual defendant must possess control over a company’s actual ‘operations’ in a manner that relates to a plaintiffs employment.
Irizarry, 722 F.3d at 109, 2013 WL 3388443, at *8; cf. Patel v. Wargo, 803 F.2d 632, 638 (11th Cir.1986) (defendant who was both president and vice president of a corporation, as well as a director and principal stockholder, was not an employer because he “did not have operational control of significant aspects of [the company]’s day-to-day functions, including compensation of employees or other matters ‘in relation to an employee’ ” (citing Agnew, 712 F.2d at 1514)).[18]
The closest the complaint comes to alleging that Ullian had operational control over plaintiffs’ employment and compensation is in the allegations that she: had the authority to hire and fire employees; sought to ensure minority representation in the workforce; was involved in layoffs; and “was involved in the negotiation with unions, including relating to the unfair labor practices of nurses.” But these fairly broad allegations, even when read together with the rest of the complaint, see Ocasio-Hernández v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir.2011), do not create a plausible inference that Ullian played a role “in causing [BMC] to undercompensate” the plaintiffs, Baystate, 163 F.3d at 678. To be sure, I do not think our cases require, at the pleading stage, particular facts showing that an individual defendant made a specific decision or took a particular action that directly caused the plaintiffs’ undercompensation. But something more than boilerplate assertions of “authority” is required; a complaint must present facts plausibly showing that the plaintiffs’ compensation was sufficiently within the defendant’s bailiwick to justify holding her personally liable.[19] Cf. Agnew, 712 F.2d at 1513. Here, I see no such facts. The gist of the plaintiffs’ complaint is that BMC’s automated timekeeping system combined with its inflexible work and training requirements to cause systematic undercompensation. There are no allegations connecting Ullian to any component of this regime, let alone establishing that she had “operational control” over it. See Baystate, 163 F.3d at 678.
Finally, as the majority acknowledges, an individual FLSA defendant’s ownership interest in the business is a major consideration under our precedents. See Hotel Oasis, 493 F.3d at 34; Agnew, 712 F.2d at 1511-12. Here, there is of course no allegation that Ullian had any ownership interest in BMC, which is a non-profit organization. Moreover, BMC is a large organization. All else being equal, BMC’s size makes it less plausible that the president and CEO had a hand in causing the employees’ undercompensation than it would be in, say, a smaller, closely held company. In sum, given the allegations *65 in the complaint and our determination that an expansive definition of the term “employer” in this context is “untenable,” Baystate, 163 F.3d at 679, I cannot conclude that the plaintiffs have stated a claim against Ullian.
I am cognizant that, before discovery, a plaintiff cannot know everything about a defendant’s potentially wrongful conduct, especially when it comes to the inner workings of a corporate or institutional defendant. Thus, our post -Twombly cases have recognized that “ ‘some latitude’ may be appropriate where a plausible claim may be indicated ‘based on what is known,’ at least where ... ‘some of the information needed may be in the control of [the] defendants.’ ” Menard, 698 F.3d at 45 (alteration in original) (quoting Pruett, 678 F.3d at 15). But “a plausible claim” is still required. And Twombly and Iqbal make clear that a claim is not plausible when the “complaint pleads facts that are ‘merely consistent with’ a defendant’s liability.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). That is what we have here. It is perhaps possible that Ullian is the plaintiffs’ employer under the FLSA. The allegations in the complaint are consistent with that possibility. But broad assertions that Ullian had authority that might encompass the requisite degree of control over the plaintiffs’ employment do not “raise a reasonable expectation that discovery will reveal evidence of’ liability. Twombly, 550 U.S. at 556, 127 S.Ct. 1955. For that reason, I respectfully dissent from the court’s decision that the plaintiffs have stated a plausible claim against Ullian. I join the court’s opinion in all other respects.

. The FLSA defines “employer” to "include! 1 any person acting directly or indirectly in the interest of an employer in relation to án employee and includes a public agency.” 29 U.S.C. § 203(d). This definition has aptly been called “unhelpful.” Jackson v. Conrad, No. 09-00425, 2010 WL 3852343, at *1 (D.D.C. Sept. 30, 2010) (quoting Henthorn v. Dep’t of Navy, 29 F.3d 682, 684 (D.C.Cir. 1994)) (internal quotation marks omitted).

. This is not to suggest that allegations of an individual defendant’s authority over other aspects of a business are irrelevant to the employer inquiry; they are not. See Irizarry, 2013 WL 3388443, at *8. But neither are they sufficient.

. I call the complaint’s allegations against Ullian “boilerplate” not only because of their vagueness but also because they mirror the allegations made against the individual defendants in other FLSA suits filed by the plaintiffs’ counsel. E.g., Amended Complaint at 17-18, Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 10 CIV. 2661 PAC, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) (No. 10-2661), ECF. No. 39.