**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SHAWN J. GIESWEIN,

     Defendant - Appellant.

Nos. 16-6366 & 17-6044

———————————————————

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:07-CR-00120-F-1)**
———————————————————

Meredith B. Esser, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, on the briefs), Office of the Federal Public Defender, Districts of Colorado and Wyoming, for Defendant-Appellant.

Nicholas J. Patterson, Assistant U.S. Attorney (Mark A. Yancey, U.S. Attorney, and Virginia L. Hines, Assistant U.S. Attorney, on the briefs), Office of the United States Attorney, Western District of Oklahoma, for Plaintiff-Appellee.

———————————————————

Before **LUCERO**, **MATHESON**, and **McHUGH**, Circuit Judges.

———————————————————

**LUCERO**, Circuit Judge.

———————————————————

     Shawn Gieswein appeals his sentence pursuant to convictions for witness tampering and possession of a firearm as a felon. We agree with Gieswein that the district court erred in applying a circumstance-specific approach to determine that his

prior conviction for lewd molestation in Oklahoma state court qualified as a "forcible sex offense" and thus a "crime of violence" under the Sentencing Guidelines. Recent changes to the Guidelines have not abrogated our prior decisions holding that the categorical approach applies in determining whether a conviction qualifies as a "forcible sex offense." Because the Oklahoma statute includes conduct that would not qualify, Gieswein's conviction should not have been treated as a crime of violence.

Although an erroneously calculated Guidelines range generally requires resentencing, this is the rare case in which the error was harmless. At Gieswein's original sentencing hearing, the district court varied upward to 240 months' incarceration based on Gieswein's criminal history. Following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), Gieswein was resentenced with a substantially lower Guidelines range. The district court nevertheless re-imposed a sentence of 240 months, indicating it would have gone higher but for the statutory maximum. Given this procedural posture, the district court's thorough explanation for the sentence imposed, and the constraining effect of the statutory maximum, it is clear that the district court would have imposed the same sentence had it not erred in treating Gieswein's lewd molestation conviction as a crime of violence. We further conclude the sentence is substantively reasonable. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

# I

In 2006, law enforcement officers discovered a .22 caliber rifle in Gieswein's home in Woodward County, Oklahoma while executing a search warrant. Because Gieswein had a number of prior felony convictions, he was charged with illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(1). He was later charged with witness tampering in violation of 18 U.S.C. § 1512(b)(1). Gieswein was convicted on both counts.

A Presentence Investigation Report ("PSR") determined that Gieswein had three prior convictions qualifying as violent felonies under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), all from Oklahoma state court: (1) destruction of property by explosive device; (2) lewd molestation; and (3) first-degree burglary. Based on a total offense level of 33 and a criminal history category of IV, his recommended Guidelines range was 188 to 235 months' imprisonment.

The government moved for an upward variance based on Gieswein's lengthy criminal record. It noted that Gieswein was convicted in 1995 of destroying a car with a pipe bomb. While under a suspended sentence for that crime, Gieswein was convicted of lewd molestation.[1] And while under a suspended sentence for lewd molestation, Gieswein committed first-degree burglary by breaking into his ex-girlfriend's home and stealing several items of property. Gieswein violated a protective order against that ex-girlfriend on two other occasions. Also while under a

---

[1] Gieswein rubbed his genitals against those of a nine-year-old child and attempted to engage in intercourse with her.

3

suspended sentence for lewd molestation, Gieswein embezzled over $3,000 from his employer. At the time of his original sentencing, Gieswein was subject to pending charges for failing to register as a sex offender. Additionally, Gieswein surreptitiously filmed women in intimate situations on numerous occasions. In one instance, he recorded himself molesting his aunt, who was undergoing treatment for cancer, while she slept. Another video included a child.

The district court adopted the recommended Guidelines range. But it concluded that an upward variance was appropriate because the Guidelines did "not give sufficient effect to the depth and the breadth, the persistence and the depravity and the harmfulness of the criminal conduct of this defendant." The court stated that Gieswein had engaged in "a broader range of criminal activity than I have ever seen out of a single defendant," and imposed a sentence of 240 months.

We affirmed Gieswein's convictions on direct appeal. United States v. Gieswein, 346 F. App'x 293, 297 (10th Cir. 2009) (unpublished). He has since filed a number of unsuccessful pleadings collaterally attacking his conviction and sentence. See In re Gieswein, No. 13-6206 (10th Cir. Sept. 24, 2013) (unpublished); In re Gieswein, No. 13-6022 (10th Cir. Feb. 21, 2013) (unpublished); United States v. Gieswein, 495 F. App'x 944, 945 (10th Cir. 2012) (unpublished).

In 2015, Gieswein sought permission to file a successive 28 U.S.C. § 2255 motion based on the Supreme Court's decision in Johnson, which struck down ACCA's residual clause as unconstitutionally vague. 135 S. Ct. at 2563. After the Supreme Court held that Johnson applies retroactively to cases on collateral review,

4

Welch v. United States, 136 S. Ct. 1257, 1265 (2016), we granted Gieswein authorization to file a second § 2255 motion. The government conceded that Gieswein's prior conviction for lewd molestation no longer qualified as a violent felony and the district court vacated his sentence.

An addendum to Gieswein's original PSR noted Gieswein's prison disciplinary record, which included eight incidents, as well as a pending charge for assault and battery upon a police or other law officer related to an incident that occurred shortly before his original sentence was imposed. The addendum to the PSR recommended a base offense level of 24. Although Gieswein's prior conviction for lewd molestation no longer qualified as a violent felony under ACCA, the PSR stated that it was a "crime of violence" under the definition of "forcible sex offense" provided in U.S.S.G. § 4B1.2(a)(2) and application note 1. Gieswein contended that the offense did not qualify as a crime of violence. The government again moved for an upward variance, arguing that Gieswein should be resentenced to 240 months, the statutory maximum.[2]

At resentencing, the district court overruled Gieswein's objections and adopted the PSR's findings. With a base offense level of 24, a two-level enhancement for obstruction of justice, and a criminal history category of IV, Gieswein's amended Guidelines range was 92 to 115 months. The court found that the new Guidelines

_____

[2] Each count of conviction carried a ten-year statutory maximum, which could be imposed consecutively for a total sentence of 240 months. See § 1512(b) (2007); § 924(a)(2). After Gieswein was convicted, the statutory maximum for an offense under § 1512(b)(1) was increased by amendment to twenty years. See Court Security Improvement Act of 2007, Pub. L. No. 110-177, 121 Stat. 2534, 2537 (2008).

range "falls far short of reflecting the extent to which Mr. Gieswein is a menace to society" and announced its intention to vary upward substantially. It stated that Gieswein's criminal history was "remarkable not only for the seriousness of the defendant's criminal conduct but for, if you will, the diversity of it." After reviewing that history in detail, the court reiterated its comments from the original sentencing hearing that the Guidelines failed to "give sufficient effect to the depth and the breadth and the persistence and the depravity and the harmfulness of this defendant's criminal conduct," concluding that this statement "is even more true now with the additional assault case." Citing incapacitation as its predominant motivating factor under 18 U.S.C. § 3553(a), the court varied upward to the statutory maximum of 240 months. It indicated that it would have gone higher if not for that maximum. Finally, the court noted that its conclusion "would be the same even if all of the defendant's objections to the presentence report had been successful." Gieswein timely appealed.[3]

## II

We review the overall reasonableness of a sentence in two steps. First, we "ensure that the district court committed no significant procedural error." United States v. Sanchez-Leon, 764 F.3d 1248, 1261 (10th Cir. 2014) (quotation omitted).

---

[3] After his notice of appeal was filed, Gieswein filed pro se motions in district court seeking reconsideration of his sentence, change of venue, recusal, and bond. In a single order, the district court dismissed in part and denied in part. Gieswein filed a separate notice of appeal from that order. We consolidated the appeals. Because Gieswein does not advance any argument as to the issues raised in his post-judgment motions, those issues are waived. See Anderson v. U.S. Dep't of Labor, 422 F.3d 1155, 1174 (10th Cir. 2005).

6

The procedural reasonableness of a sentence is reviewed for "abuse of discretion, under which we review de novo the district court's legal conclusions regarding the guidelines and its factual findings for clear error." United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012). Second, we "consider the substantive reasonableness of the sentence." Sanchez-Leon, 764 F.3d at 1261 (quotation omitted).

Whether a prior conviction qualifies as a "crime of violence" under the Guidelines "is a question of statutory construction we review de novo." United States v. Williams, 559 F.3d 1143, 1146 (10th Cir. 2009). "[W]e look at the language in the guideline itself, as well as the interpretive and explanatory commentary to the guideline provided by the Sentencing Commission." United States v. Robertson, 350 F.3d 1109, 1112 (10th Cir. 2003) (quotation omitted). Such commentary from the Sentencing Commission is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

## A

The Guidelines impose an increased offense level for certain firearm offenses if the defendant has two prior felony convictions for a "crime of violence," U.S.S.G. § 2K2.1(a)(2), which includes any felony "forcible sex offense," § 4B1.2(a)(2). A crime involving sexual abuse of a minor qualifies as a forcible sex offense if it "would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States." § 4B1.2 app.

7

n.1. Accordingly, we must compare Gieswein's prior Oklahoma conviction for lewd molestation with 18 U.S.C. § 2241(c).

In drawing such comparisons, there are two general approaches: "the categorical approach and the circumstance-specific approach." United States v. White, 782 F.3d 1118, 1130 (10th Cir. 2015). When a statute or Guideline "was intended to refer to the specific acts in which a defendant has engaged on a prior occasion, we use a circumstance-specific approach" under which we "may look beyond the elements of the prior offense and consider the facts and circumstances underlying an offender's conviction." Id. at 1131 (quotation omitted). But if a provision "refers to the generic crime," we must apply the categorical approach, looking only to "the elements of the statute forming the basis of the defendant's conviction," rather than the particular facts of a defendant's conduct. Id. at 1130-31.

Whether Gieswein's prior lewd molestation conviction qualifies as a forcible sex offense turns on the approach we apply. The Oklahoma statute under which Gieswein was convicted includes all victims below the age of sixteen within its ambit. See Okla. Stat. tit. 21, § 1123. In contrast, the federal statute at issue requires that the victim be under the age of twelve. See 18 U.S.C. § 2241(c). Additionally, the Oklahoma statute proscribes a broader range of conduct. It applies to defendants who "[l]ook upon, touch, maul, or feel the body or private parts of any child . . . in any lewd or lascivious manner by any acts against public decency and morality." § 1123(A)(2). And it "does not require the body or private parts looked upon, touched, mauled or felt to be naked." Heard v. State, 201 P.3d 182, 183 (Okla. Crim.

8

App. 2009) (quotation omitted).  But the federal statute requires "a sexual act with another," § 2241(c), defined to include various forms of sexual contact and "intentional touching, not through the clothing," § 2246(2)(D).  Because the Oklahoma statute "sweeps more broadly than" § 2241(c), it "cannot categorically be considered a crime of violence" under the forcible sex offense theory.  United States v. Kendall, 876 F.3d 1264, 1267-68 (10th Cir. 2017) (quotation omitted).[4]

Under the circumstance-specific approach, however, we would look to the particular conduct underlying Gieswein's conviction.  In pleading guilty to the lewd molestation charge, Gieswein admitted to rubbing his penis against the vaginal area of a nine-year-old.  This conduct would qualify as a violation of § 2241(c).

We have previously held that the categorical approach applies in determining whether a prior conviction qualifies as a forcible sex offense, and thus crime of violence, under § 4B1.2(a)(2).  See United States v. Wray, 776 F.3d 1182, 1188 (10th Cir. 2015) ("Bound as we are to employ the categorical approach, comparing the elements of the offense in question to the examples set forth in the guideline, we cannot say that Mr. Wray's offense is, categorically, a 'forcible' sex offense."); United States v. Madrid, 805 F.3d 1204, 1208 (10th Cir. 2015) ("[A] statute encompassing situations in which the victim may factually consent to sexual activity is not a forcible sex offense."), abrogated on other grounds by Beckles v. United

_____

    [4] The government concedes that Gieswein's conviction does not qualify under the modified categorical approach because the alternative methods of violating the statute are means, not elements, and thus the statute is not divisible.  See Mathis v. United States, 136 S. Ct. 2243, 2248 (2016).

9

States, 137 S. Ct. 886 (2017).  However, the government argues that a revision to the Guidelines definition of forcible sex offense issued after these cases were decided clarifies that a circumstance-specific approach should apply.  See Stinson, 508 U.S. at 46 ("Amended commentary is binding on the federal courts even though it is not reviewed by Congress, and prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation that satisfies the standard we set forth today.").

> In the amended Guidelines, "forcible sex offense" is defined to include
>
> sexual abuse of a minor and statutory rape . . . only if the sexual abuse of a minor or statutory rape was . . . an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

U.S.S.G. § 4B1.2(a)(2) app. n.1.  In explaining the reason for this amendment, the Sentencing Commission elaborated that:

> As amended, "forcible sex offense" includes offenses with an element that consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. . . .  [T]his addition reflects the Commission's determination that certain forcible sex offenses which do not expressly include as an element the use, attempted use, or threatened use of physical force against the person of another nevertheless constitute "crimes of violence" under § 4B1.2. . . .  This addition makes clear that the term "forcible sex offense" in § 4B1.2 includes sexual abuse of a minor and statutory rape where certain specified elements are present.

U.S.S.G. app. C., amend. 798, at 131 (2016).

The Sentencing Commission's repeated use of the word "elements" in this explanation demonstrates that it did not intend to depart from our holding that the

10

categorical approach applies. "[B]ecause the guidelines are the equivalent of legislative rules adopted by federal agencies," commentary from the Sentencing Commission "should be treated as an agency's interpretation of its own legislative rule." United States v. Morris, 562 F.3d 1131, 1135 (10th Cir. 2009) (quotations omitted). When the Commission uses the word "element," it "asks us to look at the elements of the statute of conviction." United States v. Martinez-Hernandez, 422 F.3d 1084, 1087 (10th Cir. 2005). The Commission's explanation makes clear that the definition of "forcible sex offense" was provided to caution against interpreting "force" to exclude offenses in which consent could not be legally given, but physical force was not used, rather than barring application of the categorical approach.

We accordingly reject the government's argument that the Sentencing Commission has undermined our prior holdings, and apply the categorical approach to the definition of forcible sex offense. And because Oklahoma's lewd molestation statute sweeps more broadly than § 2241(c), we hold that the district court procedurally erred in concluding that Gieswein's lewd molestation conviction was a "forcible sex offense" as defined in § 4B1.2(a)(2) app. n.1.

**B**

"If we find a procedural error, resentencing is required only if the error was not harmless." Sanchez-Leon, 764 F.3d at 1262 (quotation omitted). Procedural error is harmless "if the record viewed as a whole clearly indicates the district court would have imposed the same sentence had it not relied on the procedural miscue(s)."

11

United States v. Kieffer, 681 F.3d 1143, 1165 (10th Cir. 2012). The government bears the burden of demonstrating harmlessness by a preponderance of the evidence. United States v. Cerno, 529 F.3d 926, 939 (10th Cir. 2008).

"When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016). Because the Guidelines "form the essential starting point in any federal sentencing analysis," an error in calculating the correct range "runs the risk of affecting the ultimate sentence regardless of whether the court ultimately imposes a sentence within or outside the range the guidelines suggest." United States v. Sabillon-Umana, 772 F.3d 1328, 1333 (10th Cir. 2014) (quotation, alteration, and emphasis omitted). A properly calculated Guidelines range ensures "that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review," even in cases in which "the sentencing judge sees a reason to vary from the Guidelines." Peugh v. United States, 569 U.S. 530, 541, 542 (2013).

Nevertheless, "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." Molina-Martinez, 136 S. Ct. at 1346; see also Sabillon-Umana, 772 F.3d at 1334 (noting that the record can reveal commentary "from the sentencing judge making clear that its error in applying the guidelines didn't adversely affect the defendant's ultimate sentence"). However, it will be a "rare case" in which we can confidently

12

state that a Guidelines calculation error "did not affect the district court's selection of the sentence imposed." United States v. Snowden, 806 F.3d 1030, 1034 (10th Cir. 2015) (quotation omitted). For example, a highly detailed explanation for the sentence imposed by a district court "could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines." Molina-Martinez, 136 S. Ct. at 1347.

We conclude that this is one of those exceptional instances in which procedural error was harmless in light of the unique posture of the case. At Gieswein's original sentencing, the district court varied upward from his advisory Guidelines range of 188 to 235 months' imprisonment. The court acknowledged that its upward variance required justification. See United States v. Peña-Hermosillo, 522 F.3d 1108, 1117 (10th Cir. 2008) (if "a district court imposes a sentence outside the recommended guideline range," it must "provide the specific reason for the imposition of a sentence different from" the recommended range (quotation omitted)). It identified the 18 U.S.C. § 3553(a) factors and determined that "the guidelines simply do not give sufficient effect to the depth and the breadth, the persistence and the depravity and the harmfulness of the criminal conduct of this defendant." The court stressed that its predominant motivation for varying upwards was "[t]he need to protect society from this defendant" and imposed a sentence of 240 months.

After the Supreme Court's decision in Johnson, Gieswein's Guidelines calculation changed radically. On resentencing, the district court determined his

13

revised range was 92 to 115 months, but elected to impose the same sentence of 240

months' imprisonment.  It explained this decision in great detail:

> I am aware of nothing persuasive that steers me in a different direction
> than that which I had at the original sentencing when I said, in
> substance, that the guidelines simply do not give sufficient effect to the
> depth and the breadth and the persistence and the depravity and the
> harmfulness of this defendant's conduct.  It was true then and is even
> more true now with the additional assault case that this defendant's
> criminal history covered a broader range of criminal activity than I have
> ever seen out of a single defendant and, if you will, the diversity or the
> broad range of criminal conduct that I've already outlined speaks for
> itself and does not require elaboration.
>
> But this does require careful thought from this Court, certainly, as to
> how this fits into the Section 3553 factors that I'm required to consider
> in every sentencing.  In my view, far and away the predominant Section
> 3553 factor that is involved here and has a bearing on my sentencing
> decision is incapacitation.  That's incapacitation pure and simple.
>
> It is my view that this defendant continues to be very much a menace to
> society fully as much as he was when he appeared before me originally
> for sentencing.  Deterrence, specific deterrence I don't think is much of
> a factor.  Perhaps general deterrence is a bit more of a factor.  The need
> to provide just punishment is a factor.  But the need to protect the public
> from further crimes of the defendant, what I have called incapacitation,
> is far and away the most predominant sentencing factor that is in play in
> this case.

The district court's Guidelines calculation on resentencing rested in part on the

erroneous conclusion that Gieswein's prior lewd molestation conviction was a

forcible sex offense.  Absent that error, Gieswein's advisory Guidelines range would

have been 63 to 78 months[5] rather than 92 to 115.  However, in light of the entire

---

[5] Without counting the lewd molestation offense as a crime of violence,
Gieswein's offense level would have been four levels lower.  Compare U.S.S.G.
§ 2K2.1(a)(4)(A) (establishing a base offense level of twenty if the defendant has one

14

record, it is clear to us that the district court would have nevertheless imposed the statutory maximum had it properly calculated Gieswein's advisory Guidelines range.

The district court elected to impose the same sentence even though Gieswein's new range was less than half of his prior range. That decision suggests that the court might again impose the same sentence under an even lower advisory range. But standing alone, this factor would not be enough to demonstrate harmlessness. See Sanchez-Leon, 764 F.3d at 1262 (noting that a procedural error "is not harmless if it requires us to speculate on whether the court would have reached the same determination absent the error" (quotation and alteration omitted)).

We give little weight to the district court's statement that its conclusion would be the same "even if all of the defendant's objections to the presentence report had been successful." Our court has rejected the notion that district courts can insulate sentencing decisions from review by making such statements. See Peña-Hermosillo, 522 F.3d at 1109 (concluding that the district court's "alternative holding that the 121-month sentence 'would be imposed even if the advisory guideline range was determined to be improperly calculated' was . . . procedurally unreasonable"); see also United States v. Black, 830 F.3d 1099, 1110 (10th Cir. 2016) (accepting concession that remand was appropriate after Guidelines calculation error despite district court's statement that "I think that a 360-month sentence is appropriate and that's what I would have imposed").

---

prior felony conviction for a crime of violence), with § 2K2(a)(2) (base offense level of 24 for a defendant with two prior convictions for a crime of violence).

15

However, in this case, in addition to the district court's re-imposition of the same sentence, two important factors tip the scales toward harmlessness. First, the district court explicitly stated that it chose to impose a sentence of 240 months' imprisonment because this figure was the statutory maximum, and indicated it would impose a higher sentence if possible. The court stated: "I frankly don't know what statutory maximum would be so high that I would not go there, but 240 months is not it." This comment indicates that the statutory maximum, rather than the Guidelines range, was the driving force behind the selected sentence. Cf. United States v. Zunie, 444 F.3d 1230, 1237-38 (10th Cir. 2006) (concluding that error under United States v. Booker, 543 U.S. 220 (2005), was harmless in light of the district court's statement that it would exceed the statutory maximum if permitted to do so).

Further, the district court's thorough explanation for its sentencing determination provides a reasoned basis for its decision to hew to the statutory maximum. In both Peña-Hermosillo and Black, the district court made cursory statements regarding its intentions under hypothetical circumstances. See 522 F.3d at 1117; 830 F.3d at 1110-11 & n.21. Such statements generally constitute procedural error because they "fall[] short of the explanation necessary for sentencing under § 3553, especially where the variance from the guidelines range" is substantial. Peña-Hermosillo, 522 F.3d at 1117; see also Gall v. United States, 552 U.S. 38, 50 (2007) ("[A] major departure should be supported by a more significant justification than a minor one."). Thus, in the vast majority of cases, it is not "procedurally reasonable for a district court to announce that the same sentence would apply even if

16

correct guidelines calculations are . . . substantially different, without cogent explanation." Peña-Hermosillo, 522 F.3d at 1117.

In this case, the district court offered a cogent explanation. It described Gieswein's criminal history as extraordinarily underrepresented by his Guidelines range. That factor compelled the district court to vary upwards at Gieswein's original sentencing. And as the court noted, Gieswein's record had worsened by the time of resentencing. Given the district court's detailed explication of its reasons for applying the statutory maximum, the record is clear that "the judge based the sentence he or she selected on factors independent of the Guidelines." Molina-Martinez, 136 S. Ct. at 1346. Under these circumstances, "[a] remand would needlessly burden the district court and counsel with another sentencing proceeding, which . . . would produce the same result." Sanchez-Leon, 764 F.3d at 1266 (quotation omitted).

## C

Gieswein also contends that his sentence is substantively unreasonable in light of his correct Guidelines range. "We review the substantive reasonableness of all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." United States v. Lente, 759 F.3d 1149, 1158 (10th Cir. 2014) (quotation omitted). "Under this standard, we will deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." Id. (quotation omitted). "When evaluating the substantive reasonableness of a sentence, we afford substantial deference to the district court, and

17

determine whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011) (quotation omitted).

Gieswein argues that the district court gave too little weight to the Guidelines. See United States v. Walker, 844 F.3d 1253, 1258 (10th Cir. 2017) (holding a sentence was substantively unreasonable in part because the district court inadequately considered the Guidelines). However, appellate courts must grant deference "not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008). At the resentencing hearing, the district court gave careful consideration to the Guidelines, but concluded that other § 3553(a) factors—promoting respect for the law, affording adequate deterrence, and protecting the public from further crimes—required a substantial upward variance. See United States v. Adams, 751 F.3d 1175, 1179 (10th Cir. 2014) ("Defendant's recidivist pattern indicated the need for a sentence that would deter further criminal conduct, promote respect for the law and protect the public from further crimes, three of the sentencing factors set forth in 18 U.S.C. § 3553(a).").

The district court elected to vary in large part because of the particular facts of Gieswein's history, explaining that his criminal-history category dramatically underrepresented the degree of his misconduct. See Kimbrough v. United States, 552 U.S. 85, 109 (2007) ( "[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the

18

heartland to which the Commission intends individual Guidelines to apply." (quotations omitted)). Gieswein engaged in a wide variety of criminal actions, including embezzlement, the use of explosives, burglary, as well as sexual abuse of a child and his terminally ill aunt. In light of all the circumstances of the case, we cannot say the sentence imposed was substantively unreasonable.[6]

## III

**AFFIRMED**.

---

[6] Gieswein also contends that § 922(g)(1) violates the Second Amendment, but acknowledges that our precedent forecloses this argument. See United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009). He also argues that the statute is unconstitutional as applied to him, but we previously rejected this argument in his direct appeal and habeas motion. Gieswein, 495 F. App'x at 946-47; Gieswein, 346 F. App'x at 295-96.