**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALEX QUINTANA-TORRES,

    Defendant - Appellant.

No. 17-3256
(D.C. No. 6:17-CR-10035-EFM-3)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

    Defendant Alex Quintana-Torres pleaded guilty, without benefit of a plea

agreement, to possessing with intent to distribute methamphetamine and heroin, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  The district court sentenced

Quintana-Torres to a term of imprisonment of 180 months.  Quintana-Torres now

appeals, arguing that the sentence imposed is substantively unreasonable.  Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we reject Quintana-Torres's argument and

affirm the judgment of the district court.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

On January 16, 2017, Quintana-Torres was arrested at a truck stop in Oakley, Kansas. A search of the vehicle that Quintana-Torres was driving produced 6.11 kilograms of actual methamphetamine. A search of a second vehicle that was associated with Quintana-Torres produced two bundles of heroin with a total combined weight of 2,221.86 grams.

On February 28, 2017, a federal grand jury returned a two-count indictment charging Quintana-Torres and two other individuals with possession with intent to distribute at least fifty grams or more of actual methamphetamine, and at least one hundred grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

On September 5, 2017, Quintana-Torres entered a plea of guilty to both counts alleged in the indictment. In doing so, Quintana-Torres acknowledged that on January 16, 2017, he and other individuals were arrested in Oakley, Kansas, while transporting heroin and methamphetamine from Las Vegas, Nevada, to Ohio. ROA, Vol. 1 at 13.

The probation office prepared a presentence investigation report (PSR). Because the offenses of conviction "involved two different drug types," the PSR converted the drug quantities "to their equivalent weights in marijuana." ROA, Vol. 2 at 12. Based upon "a quantity of marijuana equivalent to 124,421.86 kilograms," the PSR applied a base offense level of 38. Id. After applying two downward adjustments for acceptance of responsibility, the PSR arrived at a total offense level

2

of 35.  Id.  The PSR in turn arrived at a total criminal history score of one—which was based on a 2015 Nevada state conviction for driving under the influence—and a criminal history category of I.  Id. at 13.  Together, the total offense level and criminal history category resulted in an advisory Guidelines sentencing range of 168 to 210 months' imprisonment.  Id. at 23.  The PSR also noted that the statutory minimum term of imprisonment was ten years.  Id.

Quintana-Torres filed a sentencing memorandum asking the district court to vary downward from the advisory Guidelines sentencing range and impose a term of imprisonment of 120 months.  ROA, Vol. 1 at 22.  In support of this request, Quintana-Torres noted the following:

- his criminal history did not involve any violent conduct, "with the exception of a battery arrest involving a male who was involved with his then girlfriend," and his defense was that "he was simply defending himself in that incident";
- he had "no history of any firearm or other weapon offenses";
- "he ha[d] no other drug offenses, nor d[id] he live the lifestyle of [a] drug kingpin";
- his "parents [we]re elderly" and "[h]e ha[d] a 7-year-old daughter . . . with whom he ha[d] a good relationship";
- "[h]is employment history demonstrate[d] an ability to obtain good employment as a cook in fine restaurants," and "[h]e also is trained in auto mechanics and as a medical assistant";
- he was "a methamphetamine addict" and "[t]his addiction ha[d] cost him jobs, an army career, family relationships, and . . . his freedom";
- "[s]ince being re-arrested after his pretrial release he ha[d] participated in AA and NA meetings at Butler County Jail";
- "there [wa]s nothing to suggest from [the PSR] that he was anything but a transporter of illegal narcotics" and "no indication that he knew how much narcotics were being transported nor the quality of the narcotics being transported"; and
- "while not a minor participant, he did not profit from the crime in the manner the major transactional players would have."

3

Id. at 21. Quintana-Torres argued that, in light of all these factors, "[a] ten-year sentence w[ould] reflect the seriousness of the offense, respect for the law, and just punishment." Id. at 22. He also argued that "[a] ten-year sentence w[ould] certainly provide adequate deterrence." Id. Lastly, he argued that "[a] ten-year sentence, with drug treatment and removal from drugs, should give him the incentive and tools to remain drug free." Id.

The government filed a response in opposition to Quintana-Torres's sentencing memorandum. The government began by asserting that, "although the defendant pled guilty to the two counts of the Indictment, he has been consistent in minimizing his knowledge and culpability in the matter." Id. at 26. In particular, the government noted that Quintana-Torres, in contrast to his co-defendants, "lied to the [arresting] officers" regarding his knowledge of and involvement with the drugs and participants. Id. The government further asserted that "[t]he facts derived from police reports and interviews of other individuals involved in" the offense indicated that it was Quintana-Torres who was responsible for "the initial planning, recruiting of other individuals (including children), hiding and packing the drugs in attempt to hide them from law enforcement view[,] as well as directing others in their [respective] roles in the transport of the narcotics." Id. at 27. In addition, the government noted that Quintana-Torres, while on pretrial release, "failed to check in as required by his pretrial release conditions," "left his residence prior to his approved exit time," and "received a citation for battery against his girlfriend." Id. at 28. Lastly, the government noted that Quintana-Torres's "bond was subsequently

4

revoked." Id. In conclusion, the government argued that "a guideline sentence [wa]s appropriate" for Quintana-Torres. Id.

Quintana-Torres's sentencing hearing was held on November 20, 2017. Defense counsel conceded that "[p]erhaps [Quintana-Torres]" and an unindicted individual "helped get some people together to transport drugs at the behest of another person, who was apparently distributing or, actually, selling drugs to a buyer." ROA, Vol. 3 at 8. But defense counsel argued that there was "no indication from anything in the [PSR] that [Quintana-Torres] was the seller or the purchaser of drugs." Id. The district court, in turn, noted that among the factors it considered to be relevant in deciding upon a sentence for Quintana-Torres were his "relative youth" and "the extremely large quantities of drugs in this case." Id. at 20. The district court found it was "most likely true" that Quintana-Torres was not aware "of either the quantity nor the quality or purity of the drugs," but concluded that this was "not determinative under the sentencing factors." Id. Taking into account the fact that Quintana-Torres was involved in transporting two types of drugs, and also taking into account "the quality" and "quantity of drugs," the district court concluded that "[n]either a statutory minimum, nor even a low-end guideline sentence" was sufficient in its view to satisfy purposes set forth in 18 U.S.C. § 3553(a)(2). Id. at 21–22. Instead, the district court concluded that "a mid-tier guideline sentence [wa]s most appropriate." Id. at 21. The district court ultimately sentenced Quintana-Torres to "a term of 180 months on each of Counts 1 and Count 2 of the [i]ndictment, those terms to run concurrently with each other, for a controlling term of 180 months." Id.

at 24. The district court also imposed a five-year term of supervised release "on each of Counts 1 and 2, with those terms also running concurrent[,] for a controlling term of five years of supervision." Id.

Final judgment was entered on November 21, 2017. Quintana-Torres filed a notice of appeal on November 29, 2017.

II

Quintana-Torres asserts a single issue on appeal: that the 180-month sentence imposed by the district court is substantively unreasonable. In reviewing this claim, "we apply the abuse-of-discretion standard." United States v. Ibanez, 893 F.3d 1218, 1219 (10th Cir. 2018). "Under this standard, we can reverse only if the [180-month] sentence was arbitrary, capricious, whimsical, or manifestly unreasonable." Id. "When evaluating the substantive reasonableness of a sentence, we afford substantial deference to the district court, and determine whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Gieswein, 887 F.3d 1054, 1064 (10th Cir.) (quotations omitted), petition for cert. filed, — U.S. — (July 27, 2018) (No. 18-5538). Further, where, as here, the sentence "fell within the applicable guideline range," we must "presume that the sentence was reasonable." Ibanez, 893 F.3d at 1219. "To rebut this presumption, the defendant [must] show that the statutory sentencing factors render the sentence unreasonable." Id.

Quintana-Torres argues that the district court "gave inadequate weight to numerous mitigating factors, as well as to the fact that a shorter sentence would have

6

served as an adequate, and equally effective, deterrent." Aplt. Br. at 8. "For instance," he argues, his "long history of addiction was both a mitigating force in and of itself, but also important because it helped to explain the circumstances that led to the offense conduct in this case." Id. at 9. Although Quintana-Torres concedes that "the district court recognized this point," he notes that "it did so only *after* it had explained its sentence of imprisonment, and in the context of making a treatment recommendation to" the Bureau of Prisons. Id. Quintana-Torres argues that "[i]t was manifestly unreasonable for the court to recognize the impact [his] addiction had on the commission of this offense, but fail to give it *any* weight in its sentencing decision." Id. In addition, Quintana-Torres argues that the district court "failed to give adequate weight to the fact that [he] had never before served any significant time in custody" and "had only one prior conviction . . . which counted for only one criminal history point in this federal sentencing." Id. at 10.

"At the same time," Quintana-Torres argues, "the district court put far too much weight on the nature and circumstances of the instant offense," in particular "the quantities of drugs involved, and . . . Quintana-Torres's relative culpability in the group's failed plan to transport those drugs."[1] Id. at 10–11. In fact, Quintana-Torres argues, his "lack of knowledge" regarding "the specific quantity or quality of

---

[1] Quintana-Torres also challenges "the government's assessment of relative culpability," arguing that it "appears to have been based on hearsay statements made by [a codefendant] and other members of the transport group to local police, which were, thereafter, recounted in the PSR." Aplt. Br. at 11. We need not address this argument, however, because our focus is solely on the district court's rationale for selecting the 180-month sentence.

the drugs being shipped . . . was a mitigating circumstance here, particularly where the quantity drove the sentencing range up to near the top of the guidelines." Id. at 11.

After considering the statutory sentencing factors and the record in this case, we are not persuaded that Quintana-Torres has overcome the presumption of reasonableness that we must afford to the sentence imposed by the district court. The sentencing record in this case unquestionably establishes that the district court took into account "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). In particular, the district court repeatedly emphasized the fact that the offense involved the transportation of large quantities of two different types of drugs, and the fact that Quintana-Torres played a significant role in organizing and carrying out the transportation scheme. The district court also took into account the type and quantity of the drugs involved in considering "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Although Quintana-Torres complains that the district court failed to give adequate weight to his personal "history and characteristics," 18 U.S.C. § 3553(a)(1), the record indicates that the district court did take his history and characteristics into account (particularly his drug addiction and need for treatment and rehabilitation), but decided that those factors did not, in light of the nature of the offense and Quintana-Torres's role therein, justify a sentence below or even at the bottom of the advisory Guidelines sentencing range. Instead, the district court expressly "determined that a mid-tier

8

guideline sentence [wa]s most appropriate for" Quintana-Torres, and was "not greater than necessary to reflect the seriousness of the offense for which [Quintana-Torres was] convicted, to promote respect for the law, and to provide just punishment." ROA, Vol. 3 at 21–22.  In sum, we are persuaded that, in light of the statutory sentencing factors and the particular facts of the offenses of conviction, the sentence imposed by the district court was entirely reasonable.

The judgment of the district court is therefore AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge
