**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**October 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SERVANDO ESPINOZA-DE PAZ,

    Defendant - Appellant.

No. 23-5085
(D.C. No. 4:20-CR-00285-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Servando Espinoza-De Paz pled guilty to drug conspiracy. On appeal, he challenges as procedurally unreasonable the district court's refusal to vary his sentence downward from his United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range. Exercising jurisdiction under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

Mr. Espinoza-De Paz purchased methamphetamine in Mexico and resold it to distributors in Oklahoma.  He pled guilty to one count of drug conspiracy.

### A.  *Presentence Investigation Report*

The U.S. Probation Office's Presentence Investigation Report ("PSR") calculated a Guidelines range.  To determine the base offense level, the PSR made a converted drug weight calculation.[1]  It said Mr. Espinoza-De Paz was responsible for 1.68 kilograms of "actual methamphetamine" and 3.21 kilograms of a mixture and substance containing methamphetamine ("mixture").[2]  Under the Guidelines, one gram of actual methamphetamine is 20 kilograms of converted drug weight, and one gram of mixture is two kilograms.  *See* U.S.S.G. § 2D1.1(c).  The PSR calculated a converted drug weight of 33,541.2 kilograms from the actual methamphetamine and 6,426.9 kilograms for the mixture, resulting in a base offense level of 36.

Accounting for specific offense characteristics and Mr. Espinoza-De Paz's acceptance of responsibility, the PSR adjusted the offense level to 37, which, combined with his criminal history category I, yielded an advisory Guidelines range of 210 to 240 months.

---

[1] "Converted Drug Weight" is used "to determine the offense level . . . when combining differing controlled substances."  U.S.S.G. § 2D1.1(c), n.(K).

[2] Actual methamphetamine "refer[s] to the weight of the controlled substance, itself, contained in" a mixture, meaning actual methamphetamine is 100 percent pure methamphetamine.  U.S.S.G. § 2D1.1(c), n.(B).

## B. *Request For Variance*

Mr. Espinoza-De Paz requested a downward variance.[3] He argued the district court should apply a mixture conversion rate for the entire drug quantity, ROA, Vol. I at 72-75, which would have produced a base offense level of 32 and a Guidelines range of 135-168 months, *id.* at 72, 75. He said other district courts had recognized that the Guidelines treat actual methamphetamine more harshly because it could be diluted as it was sold down a distribution chain. But he argued the district court should find, as other courts had, that drug purity is no longer "an accurate proxy for culpability" because "the DEA's own data and national experience has shown that most methamphetamine confiscated today is pure regardless of whether a defendant is a kingpin or a low-level addict." *Id.* at 73-74 (quotations omitted).

At the sentencing hearing, the Government also asked the district court to grant the variance. It stated that "in times past actual methamphetamine, . . . the high percentage of methamphetamine, used to indicate or could indicate a closeness to the source." ROA, Vol. III at 40. But it said the purpose for the Guidelines' distinction between actual methamphetamine and a mixture "has been diminished" because highly pure methamphetamine is far more common and may no longer indicate "closeness to the source." *Id.*

---

[3] Mr. Espinoza-De Paz initially made a "motion for a downward departure," ROA, Vol. I at 72-76, but clarified at sentencing that he was actually requesting a variance, not a departure, ROA, Vol. III at 43.

The district court agreed that most methamphetamine today is highly pure, stating "there may be some logic to not looking at the difference between a mixture of methamphetamine versus actual methamphetamine." *Id.* at 41. But it questioned why it should not then "just look at the calculations based upon actual methamphetamine." *Id.* The court asked, "[I]f the methamphetamine we're seeing in the community is mostly pure now, doesn't that have to do with the level of dangerousness to our community?" *Id.* at 43. It then observed that methamphetamine "can be divided easier . . . [and] distributed in greater quantities if it's more pure" and again asked why it should "do away with the actual methamphetamine numbers." *Id.*

Mr. Espinoza-De Paz responded that he "d[idn't] have greater access to methamphetamine that's more dangerous than do others," and that other courts had relied on the mixture Guideline to vary downward to avoid the 10-1 sentencing disparity between actual methamphetamine and a mixture. *Id.* at 44.

The district court said it understood that other courts thought the purity of methamphetamine "may not be a good indicator of culpability," but it "d[id]n't agree with that." *Id.* at 45. It then stated "for the record [that it was] not looking at the issue of methamphetamine mixture or methamphetamine actual to determine culpability in this case." *Id.* Having considered the sentencing factors under 18 U.S.C. § 3553(a), the court was "more concerned" about Mr. Espinoza-De Paz's behavior than "what the guidelines say about the calculations," and noted that he "was responsible for bringing significant amounts of methamphetamine into [the] community by a direct access to a source in Mexico and . . . supplying methamphetamine to at least 12 street-level dealers." *Id.* The

4

court said "that's really what [it was] looking at as opposed to the purity issue" to determine Mr. Espinoza-De Paz's culpability and to decide whether a variance was warranted. *Id.* at 44-45; *see also id.* at 51.

The district court denied the variance request, *id*., and sentenced Mr. Espinoza-De Paz to a within-Guidelines sentence of 210 months in prison and 3 years of supervised release, *see id.* at 51-55.

## II. **DISCUSSION**

On appeal, Mr. Espinoza-De Paz challenges his sentence as "procedurally unreasonable." Aplt. Br. at 1, 8. He argues the district court clearly erred in finding that actual methamphetamine is more dangerous than a mixture because it can be diluted and sold in greater quantities. He contends the court abused its discretion in denying his variance on this basis.

We conclude the district court did not err. Even if it had, any error was harmless because the court did not rely on the relative danger of actual methamphetamine in denying the variance.

### A. *Legal Background*

1. **Procedural Reasonableness**

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court identified several procedural errors, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the

Guidelines range." *Id.* at 51; *see United States v. McCrary*, 43 F.4th 1239, 1244 (10th

Cir. 2022).[4]  "[T]he overarching standard for our review of the procedural reasonableness

of the court's sentence is abuse of discretion," but we review the district court's "factual

findings for clear error." *United States v. Nkome*, 987 F.3d 1262, 1268 (10th Cir. 2021)

(quotations omitted); *see Gall*, 552 U.S. at 56.  A district court's factual finding is clearly

erroneous only if it "was without factual support in the record or if after reviewing all the

evidence, we are left with the definite and firm conviction that a mistake has been made."

*United States v. Delgado-Lopez*, 974 F.3d 1188, 1191 (10th Cir. 2020) (quotations

omitted).

"If we find a procedural error, resentencing is required only if the error was not

harmless." *United States v. Gieswein*, 887 F.3d 1054, 1061 (10th Cir. 2018) (quotations

omitted).  "Procedural error is harmless if the record viewed as a whole clearly indicates

the district court would have imposed the same sentence had it not relied on the

procedural miscue(s)." *Id.* (quotations omitted).  "The government bears the burden of

demonstrating harmlessness by a preponderance of the evidence." *Id.*

---

[4] In *United States v. Kaspereit*, 994 F.3d 1202 (10th Cir. 2021), we said, "While a case involving a departure (and thus a question of guidelines application) opens the door to a procedural reasonableness challenge, we review a variance for substantive reasonableness." *Id.* at 1214.  Here, Mr. Espinoza-De Paz does not challenge the district court's finding that he was responsible for certain amounts of both actual methamphetamine and a mixture or the application of the Guidelines to those amounts. But because he challenges the denial of his variance for factual error, we review for procedural reasonableness.  *See Gall*, 552 U.S. at 51.  Our disposition would be the same under substantive reasonableness review.

## 2. **Variance**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49. But the parties may argue for "whatever sentence they deem appropriate." *Id.* A defendant may request a variance based on the factors in 18 U.S.C. § 3553(a). *United States v. McComb*, 519 F.3d 1049, 1051 n.1 (10th Cir. 2007).

## 3. **Actual Methamphetamine and Methamphetamine Mixture under the Sentencing Guidelines**

The Guidelines use drug purity as a proxy for a defendant's culpability, commenting that "the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1 cmt. n.27(C). The Guidelines treat every 1 gram of actual methamphetamine as equivalent to 10 grams of a mixture. *Id.* at § 2D1.1(c) (Drug Quantity Table); *see also id.* at § 2D1.1 n.8(D). The base offense level will therefore be higher for a given amount of actual methamphetamine than for the same amount of a mixture.

## B. *Discussion*

Mr. Espinoza-De Paz argues the district court procedurally erred in denying his request for a downward sentence variance by relying on the clearly erroneous fact that actual or highly pure methamphetamine is more dangerous than a methamphetamine

7

mixture because it can be cut or diluted for broader distribution.[5]  He contends there is "overwhelming and undisputed proof that methamphetamine is rarely, if ever, diluted in today's market."  Aplt. Br. at 1; Aplt. Reply Br. at 3-4.  He stresses that the DEA and other district courts have found that most methamphetamine is distributed in a highly pure form.  Aplt. Br. at 10-12.  His argument fails for several reasons.

First, we are not convinced the district court found an erroneous fact, let alone a clearly erroneous one.  The court accepted that methamphetamine sold in the community "is mostly pure now."  ROA, Vol. III at 43; *see also id.* at 41 ("I understand that most of the methamphetamine we see now is purportedly 90 percent, 95 percent pure . . .").  But it pointed out that it still "can be divided easier . . . and distributed in greater quantities if it's more pure."  *Id.* at 43.  This statement is not clearly erroneous.  It is not "without factual support in the record," nor are we "left with the definite and firm conviction that a mistake has been made."  *Delgado-Lopez*, 974 F.3d at 1191 (quotations omitted).

Second, the district court disagreed with the notion that the ubiquity of highly pure methamphetamine called for a variance based on the Guideline for a methamphetamine mixture.  It asked why it should not "just look at the calculations based upon actual methamphetamine."  ROA, Vol. III at 41.  The court's disagreement was not about facts but rather a different view on how the purity of methamphetamine should affect a request to vary from the Guidelines.

---

[5] Mr. Espinoza-De Paz treats actual methamphetamine and highly pure methamphetamine as equivalent terms.  *See* Aplt. Br. at 1; Aplt. Reply Br. at 3.  We do the same.

Third, the district court did not rely on any purported factual error about actual or mixture methamphetamine to deny the variance. It relied instead on the § 3553(a) factors, emphasizing that Mr. Espinoza-De Paz brought significant amounts of methamphetamine into the community from a direct source in Mexico and then supplied the drug to at least 12 dealers. *Id.* at 45, 51. The court said it was not considering the question of actual versus mixture to determine culpability. *Id.* at 45.

Finally, we also may affirm based on harmless error. "[T]he record viewed as a whole clearly indicates the district court would have imposed the same sentence" even if it clearly erred in finding actual methamphetamine is more dangerous because it can be diluted and more broadly distributed. *See Gieswein*, 887 F.3d at 1061. The court stated it was "not looking at the issue of methamphetamine mixture or methamphetamine actual to determine culpability in this case." ROA, Vol. III at 45. It said the difference between actual methamphetamine and a mixture was not relevant to Mr. Espinoza-De Paz's culpability. *See id.* Any error was thus harmless, so resentencing is not required. *See Gieswein*, 887 F.3d at 1061.

## III. CONCLUSION

We affirm the district court's sentence.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

9