**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 9, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GLENN DAVID NICKOLS, a/k/a Buck,

Defendant - Appellant.

No. 24-5056
(D.C. No. 4:22-CR-00271-JDR-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Defendant Glenn Nickols pleaded guilty to Aggravated Sexual Abuse of a Minor Under 12 Years of Age in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, and 2241(c) and Sexual Exploitation of a Child in violation of 18 U.S.C. §§ 2251(a) and 2251(e). On appeal, Defendant raises a procedural reasonableness challenge to his guideline sentence of life imprisonment, pointing to an erroneous comment by the district court concerning Defendant's eligibility for earned time credits. But the court's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

comment did not affect Defendant's advisory sentence under the Sentencing Guidelines nor the court's reasoning in imposing a life sentence. It was harmless. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm Defendant's sentence.

During the spring and summer of 2020, Defendant dated Morgan Holt, the single mother of R.H. R.H., an Indian, was only five years old at the time. Holt often worked weekends, and Defendant offered to babysit R.H. at his house in Indian Country while Holt worked. Holt trusted Defendant, who had children of his own, and agreed. But instead of supervising and caring for R.H., Defendant sexually abused her and recorded the abuse on his cellphone. The Oklahoma State Bureau of Investigation recovered images and videos of the abuse sent between emails belonging to Defendant. Some of the images showed R.H. fully unclothed and bound in wrist and ankle restraints with blue tape across her mouth and laying on a blue blanket. Other images showed Defendant touching his mouth to R.H.'s genitals and fondling them.[1]

Defendant's advisory guidelines sentence was life imprisonment. He moved for a downward variant sentence of 30 years, the statutory minimum. *See* 18 U.S.C. § 2241(c). In his variance motion, Defendant argued a sentence of 30 years would essentially be a life sentence because Defendant would be 71 years old upon release. In addition, Defendant argued in his sentencing memorandum that he had never done

---

[1] Defendant also possessed over 100 images of child pornography unrelated to R.H., some of which Defendant distributed. He received two Oklahoma convictions for this criminal activity.

anything like this before and that he was regularly using drugs and alcohol to cope with lost friends and relatives when he sexually abused and exploited R.H. At sentencing, Defendant emphasized his behavior was aberrant and unexpected by those who knew him. But the district court was not convinced aberrancy helped Defendant's case. The court asked, "[l]ikely as not, isn't that also what the mother of this child thought as well, which is that Mr. Nickols isn't the kind of person who's going to perform these kinds of acts on a five-year-old child?" and "[i]sn't it almost worse that under those circumstances, that these kinds of events happened when he was the kind of person that everybody would have trusted?" ROA Vol. III at 47.

After questioning the efficacy of Defendant's argument, the district court voiced concern that a sentence of 30 years would give Defendant a chance to violate trust again. While making this point, the court and defense counsel briefly discussed Defendant's probable age at release if sentenced to 30 years. The court said, "I mean, if you put him back out—and, frankly, if you give him a 30-year sentence, isn't it true that if he gets good time credit as well as earned time credits, that we're really probably talking about 20 [years' imprisonment]? That puts [Defendant] at about 61 years old." *Id.* at 47–48. Counsel replied, "I'd say 25." *Id.* at 48. The court responded, "I think it would be a little less than 25." *Id.* From there, the conversation moved away from precise number crunching. Counsel said, "I went to law school. I didn't go to math school," and the court recognized that whether Defendant would receive earned time credits at all was speculative, "[w]ell, it all depends, of course, on whether or not he gets earned time credits, and that . . . will depend upon whether he does what he needs

3

to do to get them." *Id.* Regardless, the court expressed concern Defendant would have time to violate trust again, "[b]ut it would be at a time in which that same kind of trust could be violated again. Would you agree with me on that?" *Id.* Counsel responded, "I don't think he's going to get the good time credit, but let's not quibble over those numbers." *Id.* Counsel then returned to his central argument that Defendant's behavior was aberrant.

Proceedings continued, and neither the court nor the parties mentioned good time or earned time credits again. When the time came to rule on Defendant's variance motion, the court summarized Defendant's argument, "Defendant contends that a mandatory minimum sentence is sufficient but not greater than necessary and is essentially a life sentence due to his age. He also contends mitigating factors such as his drug use to cope with many lost friends and relatives should be considered." *Id.* at 63. The court explained:

> Based upon the information provided by the parties, the serious nature of the instant offenses, the supervisory control the defendant had over the victim, and the lack of sufficient mitigating factors, the Court finds that this defendant is not separated from the mine-run of similarly situated defendants to the degree requested by the defendant. The Court finds that the motion for downward variance is not warranted and will be denied.

*Id.* The court imposed the guideline sentence of life imprisonment.

Defendant now asks us to vacate his sentence because the district court's comment concerning earned time credits was erroneous. The parties dispute the standard of review applicable to this appeal. Defendant argues we should review for an abuse of discretion while the Government argues for plain-error review. We

4

ordinarily review unpreserved claims of procedural error for plain error. *See United States v. Martinez–Barragan,* 545 F.3d 894, 899 (10th Cir. 2008). But we have excused a defendant's failure to object to a district court's sentencing error when "the sentencing court commits an error that the defendant cannot be expected to anticipate."[2] *Id.* (citing *United States v. Begay,* 470 F.3d 964, 976 (10th Cir. 2006), *rev'd on other grounds*, *Johnson v. United States*, 576 U.S. 591 (2015)). Defendant argues he could not anticipate the district court's discussion of earned time credits, so we should review his unpreserved argument for abuse of discretion. The Government does not respond to Defendant's unforeseeable error argument, but we have flagged concerns about the continued force of the doctrine. *See id.* at 899 n.1 (explaining why, "it is not entirely clear that *Begay*'s unforeseeable error doctrine is still good law").

Even so, we need not decide the doctrine's continued viability here as "our reasons for affirming under harmless error review would apply *a fortiori* if we reviewed only for plain error." *United States v. Ramirez*, 528 F. App'x 915, 917 n.1 (10th Cir. 2013) (unpublished). The Government would bear the burden of showing

---

[2] Defendant also argues two other exceptions to plain-error review apply. Under Fed. R. Crim. P. 51(b), "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." But Fed. R. Crim. P. 51(b) is inapplicable because Defendant had an opportunity to object to the district court's comment. We have also excused counsel's failure to object when a district court *sua sponte* raises a legal issue and explicitly resolves it on the merits. *See United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1329 (10th Cir. 2003) (explaining "the district court's own alertness in raising the issue . . . had the same effect that an argument by [counsel] would have had"). Here, the district court was not alert to the issue Defendant raises on appeal, so this is not a case where the court *sua sponte* raised an issue and resolved it on the merits.

harmlessness under abuse-of-discretion review while Defendant would bear the burden of showing error affected his substantial rights under plain-error review. *United States v. Woodmore*, 127 F.4th 193, 227 (10th Cir. 2025) (discussing the government's burden to show harmlessness); *United States v. Nunez-Carranza*, 83 F.4th 1213, 1224 (10th Cir. 2023) (discussing defendant's burden to show plain error affected his substantial rights). As the Government can bear its burden and Defendant fails in any case, we give Defendant the benefit of any doubt and assume, for the purposes of this appeal, that the less deferential abuse of discretion standard applies.

Where a district court commits procedural error in sentencing, "resentencing is required only if the error was not harmless." *Woodmore*, 127 F.4th at 227 (quoting *United States v. Gieswein*, 887 F.3d 1054, 1061 (10th Cir. 2018)). "Procedural error is harmless 'if the record viewed as a whole clearly indicates the district court would have imposed the same sentence had it not relied on the procedural miscue(s).'" *Id.* (quoting same). The Government must show harmlessness by a preponderance of the evidence. *See id.*

Here, the district court erroneously commented Defendant may receive earned time credits. In general, a prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits," but prisoners serving time for certain convictions are ineligible. 18 U.S.C. §§ 3632(d)(4)(A), (D). Prisoners, like Defendant, serving time for a conviction under "chapter 109A, relating to sexual abuse" or under "[§] 2251, relating to the sexual

exploitation of children" are ineligible. *Id.* §§ 3632(d)(4)(D)(xxxvii), (xxxix). So the court's comment that Defendant could receive earned time credits was erroneous.

Nevertheless, the record clearly shows the district court would have imposed the same sentence even absent its erroneous comment. The court made the comment while expressing concern that a sentence of 30 years would not adequately protect the public from Defendant. To be sure, the court initially observed, "if you give him a 30-year sentence, isn't it true that if he gets good time credit as well as earned time credits, that we're really probably talking about 20 [years' imprisonment]? That puts [Defendant] at about 61 years old." Counsel responded, "I'd say 25" and the court replied, "I think it would be a little less than 25." But then the court and counsel moved away from precise number crunching. Counsel said, "I went to law school. I didn't go to math school." The court then acknowledged whether Defendant received earned time credits was speculative, "it all depends, of course, on whether or not he gets earned time credits, and that . . . will depend upon whether he does what he needs to do to get them." In any case, the court said, "[b]ut it would be at a time in which that same kind of trust could be violated again." Thus, the court recognized Defendant posed a risk to the public if sentenced to 30 years' imprisonment, regardless of whether Defendant received earned time credits. In other words, whether Defendant received earned time

credits was ultimately immaterial to the court's concern that Defendant could violate trust again if sentenced to 30 years.[3]

Moreover, when the court explained its reasons for denying the variance, it said nothing remotely related to Defendant's eligibility for earned time credits. Rather, the court highlighted weighty considerations like "the serious nature of the instant offenses, the supervisory control the defendant had over the victim, and the lack of sufficient mitigating factors" persuading the court to impose the guideline sentence of life. As the record clearly shows the court would have imposed the same sentence regardless of whether Defendant was eligible for earned time credits, the court's erroneous comment was harmless.

*** 

We AFFIRM Defendant's sentence.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[3] Defense counsel apparently thought the point insignificant as well, telling the district court, "let's not quibble over those numbers" and proceeding with his central argument that Defendant's behavior was aberrant.